IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V. CRIMINAL NO. 3:25-CR-79-CWR-ASH

CORNELIUS ELLIS

# REPLY SUPPORTING MOTION TO DISMISS THE INDICTMENT

For his reply supporting his motion to dismiss the indictment [ECF 29], CORNELIUS ELLIS submits[1] the following:

## I. Second Amendment

The Government argues that Mr. Ellis's as-applied challenge is foreclosed by (1) *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025), and the alleged history of capital punishment on which it relies, and (2) *United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025) and *United States v. Bullock*, 123 F.4th 183, 184 (5th Cir. 2024), *cert. denied*, No. 25-5208, 2025 WL 2824426 (U.S. Oct. 6, 2025), and the alleged tradition of disarming dangerous people on which that precedent relies. Response of United States to Motion to Dismiss ("Response"), ECF 30, at 2–5.[2] As Mr. Ellis details below, *Diaz* does not

[1] Mr. Ellis continues to preserve for appellate review his arguments that (1) § 922(g)(1) is facially unconstitutional because it violates the Second Amendment and (2) § 922(g)(1) unconstitutionally extends Congress's authority under the commerce clause both facially and as applied in this case, and (3) § 922(g)(1) violates the Fifth Amendment's equal protection guarantee. Mr. Ellis acknowledges, though, that Fifth Circuit precedent forecloses these arguments. *See* Motion at 6, 13, 18. Mr. Ellis relies on the points he made in his motion to support these arguments.

[2] The Government relies on Mr. Ellis's prior conviction for aggravated assault. But in a footnote, *see* Response at 3 n.1, the Government invokes an alleged prior conviction for possession of cocaine. The Court should reject any attempt to rely on the alleged conviction for possession of cocaine for two reasons. First, that conviction was nonadjudicated, meaning that the trial court "with[e]ld acceptance of the plea." Miss. Code Ann. § 99-15-26. As a result, Mr. Ellis has not been convicted of possession of cocaine. Second, the Government has made no attempt to prove a history or tradition of disarming people based on prior convictions for the possession of controlled substances. This Court is entitled to rely on the historical record the Government put forth in this case. *See infra* at 2.

foreclose his as-applied challenge. Mr. Ellis agrees that *Schnur* and *Bullock* likely foreclose his challenge, but he preserves for further review his argument that *Schnur* and *Bullock* are wrong.

Before turning to the Government's arguments, it's worth emphasizing two points. First, the Government bears the burden of proof. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). The Fifth Circuit has held that felons are among "the people" protected by the Second Amendment. *United States v. Diaz*, 116 F.4th at 466–67. Under *Bruen*, § 922(g)(1) is presumptively unconstitutional, and the burden shifts to the Government to justify its regulation. 597 U.S. at 24.

Second, this Court should limit its analysis to the historical analogues the Government proffered. In *Bruen*, the Supreme Court followed "the principle of party presentation." *Id.* at 25 n.6. This meant that the Court relied on "the parties to frame the issues for decision," and it acted as a "neutral arbiter of matters the parties present[ed]." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237 (2008)). Following that principle, this Court is "entitled to decide" this case "based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6.

**A. *Diaz* does not foreclose Mr. Ellis's challenge.**

**1. The Government must identify a colonial law imposing capital punishment or estate forfeiture for a felony comparable to the defendant's predicate convictions.**

In *Diaz*, the Fifth Circuit held that laws imposing capital punishment and estate forfeiture for horse theft were relevantly similar to laws imposing disarmament for automobile theft. *Diaz*, 116 F.4th at 469–70. To reach its conclusion, the court "[a]ddress[ed] *Bruen*'s two 'central considerations,'": "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 467, 469

(quotations omitted). The court concluded that colonial horse theft laws and § 922(g)(1) burdened the Second Amendment right in a comparable way: by "permanently punishing offenders." *Id*. at 469. And it held that colonial horse theft laws and § 922(g)(1) were justified by similar reasons: "to deter violence and lawlessness." *Id*.

But before it reached the *Bruen* inquiry, the court asked an important threshold question: was there a colonial-era felony punishable by death or estate forfeiture that compares to the defendant's predicate convictions? *Id*. at 468–69. That threshold question was critical to the court's analysis for three reasons. First, identifying a comparable colonial-era felony was essential to meet "the level of historical rigor required by *Bruen* and its progeny." *Id*. at 469. This was because "not all felons today would have been considered felons at the Founding." *Id*. Then, "[t]he category" of felonies "was 'a good deal narrower.'" *Id*. (quoting *Lange v. California*, 594 U.S. 295, 311 (2021)). Now, there are more than 5,000 felony crimes in the United States Code alone, *see* The Heritage Foundation, Count the Code: Quantifying Federalization of Criminal Statutes, https://tinyurl.com/felonycount (last visited November 11, 2024), many of which were "classified as misdemeanors, or nonexistent, at common law," *Diaz*, 116 F.4th at 468 (quoting *Tennessee v. Garner*, 471 U.S. 1, 14 (1985)).

Second, identifying a comparable colonial-era felony was essential to respecting the Second Amendment's original meaning. Colonial-era laws imposing capital punishment or estate forfeiture for some felonies "establish[ed] a historical tradition of permanently punishing" offenders convicted of those felonies. *Id*. at 469. But those laws did not establish a similar historical tradition for felonies not recognized at the Founding. And using them to establish such a tradition would create "a shifting benchmark" for the meaning of the Second Amendment. *See id*.

And though the court did not explicitly address it in *Diaz*, the threshold question was important for a third reason: it ensured that the court derived its principle at the right level of generality. In her concurrence in *Rahimi*, Justice Barrett cautioned that "a court must be careful not to read a principle at such a high level of generality that it waters down the right." *United States v. Rahimi*, 602 U.S. 680, 740 (2024). She explained that *Rahimi* "settle[d] on just the right level of generality" when it found that both going-armed laws and § 922(g)(8) "prevent[ed] individuals who threaten[ed] physical harm to others from misusing firearms." *Id.* (Barrett, J., concurring). That principle was grounded by two features: (1) the conduct that both laws punished—threatened physical harm to others—and (2) the consequences of that conduct—disarmament.

Justice Barrett's reasoning supports requiring a tight fit between the colonial-era felony and the modern predicate felony when analyzing laws imposing capital punishment and estate forfeiture. Just as in *Rahimi*, the relevant principle should be grounded by the conduct the regulations punish and the consequences the regulations impose. *Id.* (Barrett, J., concurring). That reasoning supports the principle that colonial laws punished certain conduct so severely that the lesser punishment of permanent disarmament is permissible for that conduct.

**2. The Government has not identified a colonial law imposing capital punishment or estate forfeiture for aggravated assault.**

The Government put forth no evidence that aggravated assault covers conduct that would have been punished by death or civil death at the Founding. To the contrary, assault and related crimes like battery and maiming were typically punished by a term of years of imprisonment, not death or estate forfeiture.[3] The Supreme Court explained, when analyzing the closely-related crime

[3] *See e.g.*, The Laws of the State of New Hampshire 246 (John Melcher ed., 1792) (Acts of February 1791) (establishing that any person convicted of "assault" "shall be fined not exceeding three hundred pounds, imprisoned not exceeding two years, [and/or] be whipped not exceeding one hundred stripes," as the court may order); Laws of the State of New Jersey 214 (William Patterson, ed. 1800) (Act of March 18, 1796) (classifying "assault," including "with any offensive weapon or instrument," as a "high misdemeanor" punishable by up to 10 years imprisonment);

of battery, that "[a]t common law, battery—all battery, and not merely battery by the merest touching—was a misdemeanor, not a felony." *Johnson v. United States*, 559 U.S. 133, 141 (2010) (citations omitted) (emphasis in original); *see also* An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 113 (1790) (First Congress establishing that an individual convicted of maiming "shall on conviction, be imprisoned not exceeding seven years, and fined not exceeding one thousand dollars").

**B. *Schnur* and *Bullock* foreclose Mr. Ellis's challenge, but they were wrongly decided.**

In *Bullock*, the Fifth Circuit upheld the constitutionality of § 922(g)(1) as applied to a defendant with prior convictions for manslaughter and aggravated assault for "sho[oting] an unarmed bar bouncer, fir[ing] a 'barrage of bullets' into a nearby crowd, and kill[ing] a nineteen-year-old passerby." *Bullock*, 123 F.4th at 184. The court concluded that § 922(g)(1), as applied to the defendant, was relevantly similar to colonial laws punishing homicide with death. *Id*. at 185. And the Court relied on two other historical analogues: laws prohibiting "dangerous people from possessing guns" and laws prohibiting "going armed." *Id*. These historical analogues were relevantly similar to § 922(g)(1) as applied to a defendant "whose underlying convictions stemmed from the threat and commission of violence with a firearm." *Id*.

In *Schnur*, the Fifth Circuit held that § 922(g)(1) was constitutional as applied to the defendant because of his prior Florida conviction for aggravated battery for "brutally attack[ing] the victim, kicking and punching the man while he was on the ground," all while "holding a taser." *Schnur*, 132 F.4th at 868. The court emphasized the "Nation's longstanding tradition of disarming persons with a violent criminal history analogous to Schnur's." *Id*. at 869.

III The Laws of Maryland 461 (Virgil Maxcy, ed., 1811) (Act of November 1809) (punishing assault with between two and ten years imprisonment); A Compilation of Laws of the State of Georgia 551 (Lucius Q. Lamar, ed. 1821) (Act of 1811) (punishing the offenses of "maiming" and "stabbing" with a term of years of imprisonment).

These cases likely foreclose Mr. Ellis's as-applied challenge given his prior conviction for aggravated assault, but Mr. Ellis contends that the Fifth Circuit should revisit them because they read the colonial history at too high a level of generality. *See Rahimi*, 602 U.S. at 740 (Barrett, J., concurring). Though *Bullock* and *Schnur* rely heavily on going-armed laws, those laws are not relevantly similar to § 922(g)(1) as applied to Mr. Ellis because the laws fail to impose a comparative burden. Going-armed laws imposed temporary disarmament. Section 922(g)(1), on the other hand, works a permanent deprivation of the right to keep and bear arms. *See, e.g., Diaz*, 116 F.4th at 469 ("[T]hese laws achieved their goals by permanently punishing offenders, as does § 922(g)(1)."). The distinction is particularly important in this case since Mr. Ellis's prior conviction is more than a decade old and he has not been accused of threatening or committing violence since that time. Going-armed laws are not relevantly similar to § 922(g)(1) as applied to Mr. Ellis.

Finally, the Government cites historical laws disarming "dangerous" people, including laws disarming political adversaries. Response at 4. Many of these categorical restrictions were rejected by the Second Amendment and should serve as "cautionary tales" today. *Rahimi*, 602 U.S. at 776 (Thomas, J., dissenting) ("Far from an exemplar of Congress's authority, the discriminatory regimes the Government relied upon are cautionary tales. They warn that when majoritarian interests alone dictate who is 'dangerous,' and thus can be disarmed, disfavored groups become easy prey."); see also *Rahimi*, 602 U.S. at 774 (Thomas, J., dissenting) ("In reality, the 'law-abiding, dangerous citizen' test is the Government's own creation, designed to justify every one of its existing regulations. It has no doctrinal or constitutional mooring.").

The Fifth Circuit has held that "not one piece of historical evidence suggests that, at the time they ratified the Second Amendment, the Founders authorized Congress to disarm anyone it

deemed dangerous." *United States v. Connelly*, 117 F.4th 269, 277 (5th Cir. 2024). Instead, the Court noted that the alleged historical analogues disarming "dangerous" people "fall into two groups": laws disarming political dissidents and laws disarming religious minorities. *Id*. at 277–78. These laws disarmed those thought to be political traitors or potential insurrectionists. *Id*. They do not share the same purpose as § 922(g)(1) and are therefore not relevantly similar historical analogues. *See Bruen*, 597 U.S. at 29 (explaining the metrics of comparing "relevantly similar" analogues).

## II. Overbreadth and Vagueness

### A. Overbreadth

Section 922(g)(1) statute sweeps more broadly than the constitution allows. Under *Bruen* and *Diaz*, there are certain felonies that do not justify disarmament even though they are covered by the plain language of § 922(g)(1). *See Diaz*, 116 F.4th at 467. There is therefore a substantial risk that § 922(g)(1) chills the exercise of the Second Amendment right to keep and bear arms, a "fundamental right[] necessary to our system of ordered liberty." *Rahimi*, 602 U.S. at 690 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010)); see *United States v. Rahimi*, 61 F.4th 443, 461 (5th Cir.), *cert. granted*, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 (2023), *and rev'd and remanded*, 602 U.S. 680, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024) (Ho, J., concurring) ("The right to keep and bear arms has long been recognized as a fundamental civil right.").

### B. Vagueness

Section 922(g)(1) is unconstitutional because it fails to provide a person of ordinary intelligence fair notice of what conduct is prohibited. *See Grayned v. City of Rockford*, 408 U.S. 104 (1972). The Government responds to Mr. Ellis's vagueness challenge by relying on the Fifth Circuit's opinion in *United States v. Branson*, 139 F.4th 475 (5th Cir. 2025).

To start, *Branson* does not foreclose Mr. Ellis's challenge. There, the defendant challenged § 922(g)(1) as void for vagueness, but he failed to preserve his argument in the district court. *Branson*, 139 F.4th at 479. The Fifth Circuit applied plain-error review, and it explained that the defendant could not show that the court had plainly erred. *Id.*

The Court's conclusion does not foreclose preserved vagueness challenges to § 922(g)(1). The Fifth Circuit's Second Amendment jurisprudence illustrates this point. In *United States v. Jones*, 88 F.4th 571, 573–74 (5th Cir. 2023), the defendant raised an unpreserved challenge to the constitutionality of § 922(g)(1). The Fifth Circuit rejected the defendant's challenge, holding that the defendant could not show plain error. *Jones*, 88 F.4th at 574. But just a few months later, in the context of a preserved challenge, the Fifth Circuit "abandon[ed]" that prior precedent, holding that *Bruen* had unequivocally overruled it. *Diaz*, 116 F.4th at 465. *Branson* turns on the plain-error standard of review; it does not foreclose a preserved vagueness challenge.

And the Court should reject the Government's attempts to invoke *Branson* to defeat Mr. Ellis's vagueness challenge. First, the Government argues that § 922(g)(1) is sufficiently definite. Response at 5. But the statute's creates a necessary but insufficient condition for a constitutional conviction under § 922(g)(1). In addition to proving that a defendant has a qualifying conviction, the Government must also prove that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" the defendant's criminal history. *Diaz*, 116 F.4th at 467. To determine whether the Government has met its burden of proof, the Court's analysis centers on analogical reasoning and judgments unpredictable to the ordinary person.

And judicial interpretations of a statute can render it unconstitutionally vague. In *International Harvester Company of America v. Kentucky*, 234 U.S. 216, 222–23 (1914), the Supreme Court reversed convictions for price-fixing on the grounds that the penal statute, as

construed by the Kentucky courts, was unconstitutionally vague. The Court based its holding not on the text of the statute but on the interpretation offered by the Kentucky courts, which had attempted to harmonize "several statutes somewhat far apart in time and of seemingly contradictory import." *Id*. at 219.

As in *International Harvester*, this Court has endeavored to harmonize the Second Amendment and the plain language of § 922(g)(1). Because § 922(g)(1) sweeps more broadly than the Second Amendment permits, the Court has been forced to adopt an interpretation of § 922(g)(1) that adds unpredictable and imprecise conditions to the statutory text. In *United States v. Kimble*, 142 F.4th 308, 311 (5th Cir. 2025), for example, the Court identified at least three conditions that support a constitutional conviction of that statute: "theft, violence, and violating the terms of one's release by possessing arms while on parole." None of these conditions is apparent in the plain text of § 922(g)(1), so an ordinary person lacks notice of them.

The Court's interpretation of § 922(g)(1) fails to provide fair warning of the conduct that supports a constitutional conviction. Section 922(g)(1) is unconstitutionally vague. *See United States v. Davis*, 588 U.S. 445, 448 (2019).

## III. Conclusion

For the reasons stated above, Mr. Ellis respectfully requests that this Court dismiss the indictment filed against him on any or all grounds articulated.

Respectfully submitted, this 15th day of October, 2025.

Respectfully submitted,

By: Omodare B. Jupiter
Federal Public Defender

*Michael L. Scott*
Michael L. Scott, MB#101320
Senior Litigator
Office of the Federal Public Defender
S. District of Mississippi
200 South Lamar St., Suite 200-N
Jackson, MS 39201
Telephone: 601-948-4284
Facsimile: 601-948-5510
Email: mike_scott@fd.org

Attorney for Defendant

**CERTIFICATE OF SERVICE**

I, Michael L. Scott, hereby certify that on this day I electronically filed the foregoing reply with the Clerk of the Court using ECF system which sent notification of such filing to all attorneys of record.

This the 15th day of October, 2025.

*/s/Michael L. Scott*
Attorney for Defendant